IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| DIEDRA MONET BLANCHARD, ) | |
| JOSHUA BLACKMON, CYNTHIA ) | |
| BRITTON, and SARA BALLARD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 5:13-cv-00729-JEO |
| ) | |
| UNITED STATES OF AMERICA ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**CORRECTED REPORT AND RECOMMENDATION**

Plaintiffs Diedra Blanchard, Joshua Blackmon, Cynthia Britton, and Sara Ballard have brought this action pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671-2680, against the United States of America ("United States" or "Government") and seven federal employees. (Doc. 1).[1] The plaintiffs, who work in the Huntsville Field Office of the Defense Security Service, filed their complaint after discovering that electronic folders containing their personal information had been saved on a network shared drive accessible by other employees in the Huntsville Field Office. They have asserted claims for libel, breach of contract, invasion of privacy, negligent and intentional infliction of emotional distress, breach of confidentiality, and violation of the Privacy Act of 1974.[2]

The case is now before the court on (1) the Government's motion to dismiss or, in the

---

[1] References to "Doc. __" are to the document number assigned by the clerk of the court in the court file.

[2] These are the claims as the court can best discern them from the plaintiffs' complaint. The complaint does not set forth the claims in separate counts.

alternative, motion for summary judgment (doc. 9); (2) the plaintiffs' motions for joinder of two additional parties, Shawn Hazelwood and Derek Fleischman (docs. 22, 27, 33, 34); and (3) the plaintiffs' motion for leave to begin discovery. (Doc. 31).  For the reasons set forth below, the undersigned recommends that the Government's motion to dismiss/motion for summary judgment be granted and that the plaintiffs' motions for joinder of additional parties and for leave to begin discovery be denied.

I.  **THE GOVERNMENT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

   A.  Facts

The plaintiffs are employees of the Defense Security System ("DSS") in Huntsville, Alabama. (Doc. 1 at ¶ 17).  DSS is an agency of the United States Department of Defense.  (Doc. 1 at ¶ 18).

On or about January 30, 2012, plaintiffs Cynthia Britton, Deidra Blanchard, and Sara Ballard discovered that they could access a file named "FOC Actions" on the network shared drive for the Huntsville Field Office. (Doc. 1 at ¶¶ 19, 21-22; Doc. 11-2 at 5, 14, 22).  Within the file was a group of folders labeled with the names of various employees, including Britton, Blanchard, Ballard, and plaintiff Joshua Blackmon. (Doc. 11-2 at 5).  The folders contained personal information about the employees, including medical information, performance evaluations, and social security numbers. (Doc. 1 at ¶¶ 19-22; Doc. 11-2 at 5, 11, 14, 22).  Some of the folders also contained memoranda authored by Mark Schoenig, the Field Office Chief of the Huntsville Field Office, that allegedly referenced "the Plaintiffs' divorces, [the] psychological states of their children, ... and behaviors that Mr. Schoenig assumed were taking place in the

Plaintiffs' lifestyles encompassing a three-year period." (Doc. 1 at ¶ 30). The folders were not password protected and could be accessed by other employees in the Huntsville Field Office. (Doc. 1 at ¶ 23; Doc. 11-4 at ¶ 4).

Mark Schoenig has admitted that he placed the files (folders) containing the plaintiffs' personal information on the office's shared drive. (Doc. 11-3 at ¶ 4). He asserts that the files were "accidently placed on that drive ... from [his] agency laptop computer when [he] was attempting to place the files on the network drive that could only be accessed" by him. (*Id.*) He further asserts that he "did not know, until the files were discovered, that [he] had mistakenly placed the files on the office shared-drive, which could be accessed by all employees in the field office." (*Id.*) The plaintiffs, however, contend that Schoenig placed the files on the shared drive "intentionally ... to damage their reputation and work abilities to any and all contractors who may or could be interested in hiring [them] outside of DSS." (Doc. 1 at ¶ 26).

In April 2012, the plaintiffs filed administrative claims under the FTCA, alleging "personal injuries" resulting from the failure to protect their personal information. (Doc. 1 at ¶ 2; Doc. 11-2).

After the folders were discovered on the Huntsville Field Office's shared drive, the DSS Inspector General conducted an internal investigation into the matter. (Doc. 15-1 at 2-5). On October 22, 2012, Regina Johnson, DSS Southern Regional Director, sent letters to Blanchard, Britton, and Ballard, confirming that the folders on the shared drive contained personally identifiable information (PII) of employees assigned to that office. (*Id.*) Johnson acknowledged that the PII included such data as social security numbers, dates and places of birth, home phone numbers, and home addresses. (*Id.*) She advised Blanchard, Britton, and Ballard that while there

3

was no evidence indicating that their PII had been disclosed outside of the agency, DSS could not "totally rule out" that their PII had been seen by unauthorized personnel or otherwise compromised. (*Id.*) She further advised them that the DSS Office of Freedom of Information and Privacy had "requested that the data be removed from the Huntsville [Field Office] shared drive to prevent further access and provided refresher Privacy Act training to the responsible individual." (*Id.*) Johnson offered Blanchard, Britton, and Ballard a one-year subscription to a credit monitoring service at no cost. (*Id.*) They did not accept the offer. (Doc. 15 at 13). Instead, they (along with Blackmon) filed this action.

    **B.**    **Standard of Review**

        **1.**    **Motion to Dismiss**

The Government has moved for a dismissal of the plaintiffs' claims pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A motion to dismiss pursuant to Rule 12(b)(1) challenges subject-matter jurisdiction. A motion to dismiss for lack of subject-matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject-matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id.* Because the burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* (citing *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980)).

A motion to dismiss pursuant to Rule 12(b)(6) challenges the sufficiency of the claim(s) set out in the plaintiff's pleadings. *Harris v. Proctor & Gamble Cellulose Co.*, 73 F.3d 321, 324 (11th Cir. 1996). Thus, the " 'issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974)). When ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Speaker v. U.S. Dep't of Health & Human Servs.*, 623 F.3d 1371, 1380 (11th Cir. 2010). To survive such a motion, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Speaker*, 623 F.3d at 1380 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

### 2. Motion for Summary Judgment

In the alternative, the Government has moved for a summary judgment on the plaintiffs' claims pursuant to Rule 56. Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. PROC. 56(a). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see also Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144

(1970). Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 324. Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. PROC. 56(c)(1)(A), (B). In its review of the evidence, a court view the evidence in the light most favorable to the non-movant. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000). At summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

    C.    **Analysis**

The plaintiffs have brought this action pursuant to the FTCA. (Doc. 1 at 1). The FTCA provides a waiver of sovereign immunity for certain tort claims against the United States:

> [T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Certain torts are expressly excluded from the FTCA's scope, including "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights ...." 28 U.S.C. § 2680(h). In addition, the remedy against the United States

provided by the FTCA "is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim ...." 28 U.S.C. § 2679(b).

Pursuant to the FTCA, the plaintiffs have asserted claims for libel, breach of contract, invasion of privacy, negligent and intentional infliction of emotional distress, and breach of confidentiality. They have also asserted a claim for violation of the Privacy Act of 1974.[3] They have asserted their claims against the United States and seven federal employees: Chuck Hagel, Secretary of Defense; Michael C. Vickers, Under Secretary of Defense; Stanley L. Simms, Direct Defense Security Service; Richard Lawhorn, Director of Industrial Security; Mark Schoenig, DSS Field Office Chief in Huntsville; Regina Johnson, Regional Director of DSS in Huntsville; and Gerald Curry, ISFO Chief of Staff.[4] The plaintiffs have sued the federal employees in their official capacities only.[5]

---

[3] 5 U.S.C. § 552a. As discussed below, it is unclear whether the plaintiffs are bringing their Privacy Act claim pursuant to the FTCA or as an independent federal claim.

[4] The court notes that Gerald Curry is named in the caption of the complaint but is not identified anywhere in the body of the complaint. (*See* Doc. 1).

[5] In the plaintiffs' response to the Government's reply brief in support of its motion to dismiss/motion for summary judgment, the plaintiffs admit that "initially under the FTCA [they] alleged that the Defendants were acting within the scope of their employment." (Doc. 19 at ¶ 2). They then assert that "[u]pon further investigation ... [they] believe that the Defendants acted outside the scope of their employment in part and acted inside the scope of their employment in part." (*Id.*) However, the plaintiffs have never amended their complaint to add any allegations or claims against the federal employee defendants in their individual capacities. Indeed, their complaint expressly alleges that "as a proximate consequence of the ... [alleged] culpable acts of the Defendants[,] the Plaintiffs have suffered damages for personal injury caused by the negligent or wrongful act or omission of any employee of the Government **while acting within the scope of his office or employment** ...." (Doc. 1 at ¶ 43) (emphasis added).

### 1.     The Plaintiffs' Claims Against the Federal Employee Defendants

The Government has moved to dismiss all claims against the federal employees for lack of subject matter jurisdiction. (Doc. 10 at 4-7).  The court agrees that the claims against the federal employees are due to be dismissed.  "The United States is the only proper defendant in an FTCA action." *Simpson v. Holder*, 184 F. App'x 904, 908 (11th Cir. 2006); *see* 28 U.S.C. § 2679(b).  Accordingly, the plaintiffs' claims against Hagel, Vickers, Simms, Lawhorn, Schoenig, Johnson, and Curry are all due to be dismissed for lack of subject matter jurisdiction.

### 2.     The Plaintiffs' Claims Against the Government for Libel and Breach of Contract

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).  Therefore, if a claim falls within an exception to the Government's consent to be sued under the FTCA, the claim must be dismissed for want of federal subject matter jurisdiction. *See JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1263-64 (11th Cir. 2000) ("If the alleged conduct falls within one of these statutory exceptions [to the FTCA], the court lacks subject matter jurisdiction over the action.").

The Government argues that the plaintiffs' libel claim should be dismissed for lack of subject matter jurisdiction.  Libel claims are expressly excluded from FTCA coverage.  *See* 28 U.S.C. § 2680(h) (providing that the FTCA does not apply to "[a]ny claim arising out of ... libel").  The plaintiffs may not pursue a libel claim under the FTCA.

The Government argues that the plaintiffs' breach of contract claim–which it characterizes as a claim for "interference with employment contract rights"–should also be

dismissed for lack of jurisdiction. (Doc. 10 at 9).  The court agrees, but first notes that the claim as pleaded is utterly lacking in specificity.  In their complaint, the plaintiffs merely allege, without more, that "the Defendants have breached the contract of the Plaintiffs by not abiding by the terms and provisions of said contract." (Doc. 1 at ¶ 39).  They do not identify "said contract" or what "terms or provisions" the defendants allegedly failed to abide by.  Presumably the plaintiffs are referring to their respective employment contracts, but it is not at all clear from their complaint.

In any event, "claims based upon breach of contract are wholly alien" to the FTCA. *Blanchard v. St. Paul Fire & Marine Ins. Co.*, 341 F.2d 351, 357 (5th Cir. 1965); *see Salter v. United States*, 880 F. Supp. 1524, 1532 (M.D. Ala. 1995) ("[T]he FTCA does not extend subject matter jurisdiction to 'breach of contract claims.'").  Moreover, even if the claim is construed as one for interference with contract rights as opposed to one for breach of contract, the claim is still excluded from the scope of the FTCA.  *See* 28 U.S.C. § 2680(h) (excluding claims for "interference with contract rights"); *Selland v. United States*, 966 F.2d 346, 347 (8th Cir. 1992) ("A claim for interference with contractual relations is not within the scope of the FTCA.").  Under any construction, the plaintiffs' breach of contract claim is due to be dismissed.

### 3. The Plaintiffs' Claim for Invasion of Privacy

The plaintiffs have also averred that the defendants invaded their privacy.  Specifically, the plaintiffs aver that "the Defendants have invaded the privacy of the Plaintiffs by putting the Plaintiffs in a false light, by appropriating private information of the Plaintiffs[,] by intruding upon the solitude and seclusion of the Plaintiffs[,] and [by] putting that information obtained out to the public in a manner not approved of by the Plaintiffs." (Doc. 1 at ¶ 38).  The Government

concedes that "it is possible to bring an invasion of privacy action under the FTCA," but argues that the plaintiffs' invasion of privacy claim should be dismissed because "the laws of Alabama require the invasion of privacy to have been done intentionally ... [and] the disclosures of information [here] were accidental and limited." (Doc. 10 at 10).

In Alabama, the tort of invasion of privacy is defined as "the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Carter v. Innisfree Hotel, Inc.*, 661 So.2d 1174, 1178 (Ala. 1995).  Here, the plaintiffs have alleged in their complaint that Mark Schoenig placed their personal and confidential information on the Huntsville Field Office's shared drive "intentionally" to "damage their reputation[s] and work abilities to any and all contractors" who might be interested in hiring them outside of DSS. (Doc. 1 at ¶ 26).  Even assuming that this allegation, without more, would be sufficient to survive the Government's motion to dismiss their invasion of privacy claim, the allegation is not sufficient to defeat the Government's alternative motion for summary judgment.

In support of its motion for summary judgment, the Government submitted the Declaration of Mark Schoenig, in which Schoenig affirmatively declared that he placed the plaintiffs' files on the office's shared drive "accidently" and that he did not know he had "mistakenly" done so until the files were discovered. (Doc. 11-3 at ¶ 4).  In response, the plaintiffs have offered no affidavits, declarations, or other materials supporting their assertion that Schoenig intentionally placed the files on the shared drive to cause them harm.  Indeed, the plaintiffs acknowledge in their response that "Mr. Schoenig admitted to putting the information on the shared drive **with carelessness to the repercussions** ...." (Doc. 15 at 7) (emphasis added).

10

Although they later assert that "Mr. Schoenig's irresponsibility of [not] protecting the employee's [sic] confidentiality was in fact intentional" (*id.*), they offer no evidence to support that naked assertion.

The plaintiffs also make the vague statement in their response that they "believe [the] employer is responsible due to the ill and hostile environment they were consistently subjected to and they believe it's intentional and that the time frame of exposure verifies the malicious intent." (Doc. 15 at 4).  Again, however, they neither provide nor cite to any evidence that supports their subjective beliefs regarding the "employer's" alleged "intentional" conduct and "malicious intent."  Although not referenced by the plaintiffs, the court notes that the written statements they submitted with their administrative claims are in the record. (*See* Doc. 11-2).  In their written statements, Blanchard, Britton, and Ballard (but not Blackmon) do complain about Schoenig's alleged unprofessional conduct towards them, but all of the alleged incidents they cite occurred after they claim their personal information was saved on the Huntsville Field Office's shared drive.  In fact, except for two allegations by Britton regarding Schoenig's conduct in 2011–Schoenig allegedly made derogatory comments about Britton's demeanor and professionalism in a conversation with Blackmon in September 2011, and allegedly exhibited "odd" behavior towards her after she sought review of her performance evaluation in December 2011–all of the incidents they cite occurred after they discovered the folders containing their personal information on January 30, 2012. (*See id.*).  In sum, nothing Blanchard, Britton, and Ballard reported creates a genuine dispute of fact as to Schoenig's intent at the time he saved their folders on the shared drive.

Because intentional intrusion into another's private activities is an essential component of

11

an invasion of privacy claim under Alabama law, and because the Government has offered affirmative evidence that Schoenig's placement of the files on the shared drive was accidental rather than intentional, the plaintiffs needed to come forward with some contrary evidentiary material demonstrating the existence of a genuine dispute of material fact on this issue. Alternatively, the plaintiffs needed to show that Schoenig's declaration does not establish the absence of a genuine dispute. *See* FED. R. CIV. P. 56(c)(1)(b). They have done neither. Their mere allegation that Schoenig acted intentionally, without more, is insufficient to defeat the Government's motion for summary judgment on their invasion of privacy claim. *See* FED. R. CIV. P. 56(e)(3); *see also Celotex*, 477 U.S. at 324 (citing former Rule 56(e) and noting that once a party moving for summary judgment has met its burden, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial").[6]

### 4. The Plaintiffs' Claims for Negligent and Intentional Infliction of Emotional Distress

The plaintiffs' have also asserted claims for negligent infliction of emotional distress and intentional infliction of emotional distress. (Doc. 1 at ¶ 40). The Government does not address either claim in its brief in support of its motion to dismiss/motion for summary judgment, although it has moved for dismissal of the plaintiffs' entire complaint. (*See* Doc. 9).

---

[6] The court is mindful that no discovery has been conducted in this case. The plaintiffs, however, did not request the court to defer consideration of the Government's motion for summary judgment to allow them to conduct discovery on the issues presented in the motion. *See* FED. R. CIV. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may ... allow time to obtain affidavits or declarations or take discovery"). They have never contended, much less shown by affidavit or declaration, that the lack of discovery has prevented them from presenting facts essential to their opposition to the Government's motion.

Notwithstanding the Government's failure to address the plaintiffs' emotional distress claims, the court is satisfied that both claims are due to be dismissed.

With respect to the plaintiffs' claim for negligent infliction of emotional distress, "Alabama law is consistent with the 'zone of danger' test ... which limits recovery for emotional injury to those plaintiffs who sustain a physical injury as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Alabama Power Co. v. Murray*, 751 So. 2d 494, 499 (Ala. 1999) (citing *AALAR, Ltd. v. Francis*, 716 So. 2d 1141, 1144-47 (Ala. 1998)); *see also Brown v. First Fed. Bank*, 95 So. 3d 803, 818 (Ala. Civ. App. 2012). Here, the plaintiffs have not alleged that they suffered any physical injury or were ever placed in immediate risk of harm as a result of the defendants' alleged negligence. Therefore, their claim for negligent infliction of emotional distress fails as a matter of law.

With respect to the plaintiffs' claim for intentional infliction of emotional distress (also known as the tort of outrage), the Supreme Court of Alabama has defined the parameters for such a claim as follows:

> [O]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme.... By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society.

*American Road Serv. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980) (citations omitted). The tort is so limited that the Supreme Court of Alabama has recognized it in only three circumstances: "(1) wrongful conduct in the family-burial context, *Whitt v. Hulsey*, 519 So.2d 901 (Ala.1987);

(2) barbaric methods employed to coerce an insurance settlement, *National Sec. Fire & Cas. Co. v. Bowen*, 447 So.2d 133 (Ala.1983); and (3) egregious sexual harassment, *Busby v. Truswal Sys. Corp.*, 551 So.2d 322 (Ala.1989)." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000).

Here, the plaintiffs have not presented any evidence of any intentional or reckless conduct by the defendants, nor have they presented any facts that rise to the level of extreme or outrageous conduct required under Alabama.  Even construing the facts of this case in a light most favorable to the plaintiffs, the facts are nowhere near the level of outrageous conduct in the three categories of cases in which the tort of outrage has been recognized in Alabama. Accordingly, the plaintiffs' claim for intentional infliction of emotional distress is due to be dismissed.

### 5. The Plaintiffs' Claim for Breach of Confidentiality

As best as the court can discern from the plaintiffs' complaint, they are endeavoring to pursue a tort claim for breach of confidentiality (doc. 1 at ¶ 41), another claim the Government ignores in its brief in support of its motion to dismiss/motion for summary judgment. Assuming that the plaintiffs are asserting such a claim, the court is satisfied that the claim is due to be dismissed notwithstanding the Government's failure to address the claim directly.

The plaintiffs' claim for breach of confidentiality is based on the fact that Mark Schoenig saved their personal information on the Huntsville Field Office's shared drive. (*See* Doc. 15 at 7). However, they have not cited a single case in which the Supreme Court of Alabama has recognized an independent tort for breach of confidentiality under similar circumstances. Indeed, such a tort would appear to be encompassed within the tort of invasion of privacy, which includes "giving publicity to private information about the plaintiff that violates ordinary

decency."[7] *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997).  Therefore, to the extent the plaintiffs are seeking to assert an independent tort claim for breach of confidentiality, it is due to be dismissed.

### 6.      The Plaintiffs' Claim for Violation of the Privacy Act

Although the plaintiffs have expressly pleaded that they are bringing this action pursuant to the FTCA (doc. 1 at ¶ 1), their complaint also includes a claim for violation of the federal Privacy Act, 5 U.S.C. § 522a. (Doc. 1 at 42).  The Privacy Act "contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies.  If an agency fails to comply with those requirements 'in such a way as to have an adverse effect on an individual,' the Act authorizes the individual to bring a civil action against the agency. § 552a(g)(1)(D).  For violations found to be 'intentional or willful,' the United States is liable for 'actual damages.' § 552a(g)(4)(A)." *Fed. Aviation Admin. v. Cooper*, 132 S. Ct. 1441, 1446 (2012).

It is unclear whether the plaintiffs are bringing their Privacy Act claim under the FTCA or as an independent federal claim.  The Government has moved for dismissal of the claim on the ground that, as a federal claim, it cannot be the basis of a cause of action under the FTCA. (Doc. 10 at 10-11).  To the extent that the plaintiffs are, in fact, attempting to bring the claim under the FTCA, the court agrees that they cannot do so.  A claim is actionable under the FTCA only if the Government would be liable to the plaintiff as a "private person ... in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).  The Supreme Court has

---

[7]As discussed above, the plaintiffs' claim for invasion of privacy is due to be dismissed because the plaintiffs have not come forward with any evidence of intentional conduct on Schoenig's part.

"consistently held that § 1346(b)'s reference to 'law of the place' means the law of the State–the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). A federal claim such as a claim for violation of the Privacy Act is not cognizable under the FTCA. *See Meyer*, 510 U.S. at 478 (holding that a constitutional tort claim is not cognizable under the FTCA).

Furthermore, even if the plaintiffs are attempting to bring their Privacy Act claim as an independent federal claim separate and apart from the FTCA, the claim is still due to be dismissed. "To prevail on a Privacy Act claim under § 552a(g)(4), an individual must show, *inter alia*, that he suffered actual damages." *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690, 702 (11th Cir. 2014). The Supreme Court has held that the term "actual damages," as used in the Privacy Act, is limited to "proven pecuniary or economic harm" and does not include damages for mental or emotional distress. *Cooper*, 132 S. Ct. at 1446, 1453; *see also Corbett*, 568 F. App'x at 702 ("The Privacy Act does not allow for the recovery of non-pecuniary damages stemming from 'loss of reputation, shame, mortification, injury to the feelings and the like.'") (quoting *Cooper*, 132 S. Ct. at 1449, 1551). Because the plaintiffs have not alleged any actual damages resulting from the defendants' alleged violation of the Privacy Act, and are seeking only damages for alleged loss of reputation, emotional distress, and humiliation, their Privacy Act claim fails as a matter of law.[8]

---

[8]The court also notes that the Privacy Act "only authorizes civil actions against an agency, not individual persons." *Jones v. Luis*, 372 F. App'x 967 (11th Cir. 2010). Because the plaintiffs's Privacy Act claim is due to be dismissed on other grounds, the court need not determine whether the plaintiffs have sued an "agency" by naming the Secretary of Defense in his official capacity.

## II. THE PLAINTIFFS' MOTIONS FOR JOINDER OF ADDITIONAL PARTIES AND FOR LEAVE TO BEGIN DISCOVERY

Based on the above analysis, the plaintiffs' complaint is due to be dismissed in its entirety.[9] Therefore, the plaintiffs' claims for joinder of additional parties and for leave to begin discovery are moot.

## III. CONCLUSION

Based on the foregoing, the undersigned recommends that the Government's motion to dismiss or, in the alternative, motion for summary judgment (doc. 10) be GRANTED, and that the plaintiffs' motions for joinder of additional parties (docs. 22, 27, 33, 34) and for leave to begin discovery (doc. 31) be DENIED as moot.

## NOTICE OF RIGHT TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), Fed. R. Civ. P., any party may file specific written objections to this report and recommendation within fourteen (14) days from the date it is filed in the office of the Clerk. Any objections to the failure of the magistrate judge to address any contention raised also must be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fourteen (14) days from the date it is filed also shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and

---

[9]Because the court has determined that the plaintiffs' entire complaint is due to be dismissed, the court need not address the Government's alternative argument that the court should stay these proceedings to allow the plaintiffs to file a claim with the Secretary of Labor under the Federal Employees Compensation Act, 5 U.S.C. §§ 8101-8193. (Doc. 10 at 11-14).

recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

DONE, this the 6th day of March, 2015.

*/s/ John E. Ott*
_____
**JOHN E. OTT**
Chief United States Magistrate Judge